**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DONNA D. BOWERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-CV-471-TCK-SAJ |
| ) | |
| MEDICAL PARK CENTER PHARMACY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment filed by Defendants Medical Park Pharmacy, Inc. ("Medical Park"), Select Management & Consulting, LLC ("Select Management"), and Select HME ("Select") (collectively "Defendants") (Doc. 31).

**I.    Factual Background**

Defendants are all companies owned by Brent Moore ("Moore"). Medical Park is a pharmacy doing business in Bartlesville, Oklahoma. Select Management is a corporation doing business in Bartlesville, Oklahoma and is the "official employer" of individuals having management duties across several of the business entities owned by Moore. Select does business in Oklahoma and is involved in the field of home medical equipment. In addition to these companies, Moore owns and operates two hospice entities and an additional pharmacy.

Plaintiff Donna Bowers ("Plaintiff") was hired by Moore to serve as Director of Operations at an annual salary of $72,000. Although Plaintiff's duties included work for a number of Moore's business entities, she spent the majority of her time managing the operations of the home medical equipment business at Select, including handling personnel issues and billing/accounts receivable.

1

In November or December of 2005, Plaintiff was in the process of hiring a manager for Select's Oklahoma City office when Moore allegedly told her that he didn't want her to hire a woman because "he [didn't] feel women [had] the skills it takes to handle a managerial position." (Pl.'s Dep., Ex. B to Pl.'s Resp. to Defs.' Mot. for Summ. J., at 28:1-8.)

In January 2006, Moore hired Bart Dick ("Dick"). The precise position for which Dick was hired and his corresponding job duties are disputed by the parties. Defendants argue Dick was hired as an Executive Vice President in order to assist Moore in addressing Select's growth and pursue new business opportunities. (*See* Mot. for Summ. J. 4.) According to Defendants' version of events, Dick performed job duties separate from those performed by Plaintiff. Plaintiff disputes this assertion, however, claiming that Dick was hired to replace her. Plaintiff maintains that, after Dick was hired, she was asked to train him on her job duties and was then demoted to "billing" as Dick assumed her job responsibilities. Dick earned $100,000 in salary when he was hired.

In the first half of 2006, Plaintiff expressed insecurity regarding her position due to Dick's presence at the company. According to Plaintiff, she also made specific complaints to Moore regarding Dick's behavior towards her. Plaintiff testified that she told Moore about "[Dick's] screaming at [her], his trying to embarrass her and humiliate [her] in front of others." (Pl.'s Dep., Ex. B to Pl.'s Resp. to Defs.' Mot. for Summ. J., at 22:24-25 – 23:1-3.) Plaintiff contends that Moore responded by telling her that she needed to "do everything [Dick] told [her] to do." (*Id.* at 23:12-15.) Plaintiff also claims that she expressed these concerns to Patty Hair ("Hair"), another employee at Select who was involved in Human Resources.[1] According to Hair, Plaintiff told her that Plaintiff "felt like [Dick] . . . was . . . stepping on her toes." (Hair Depo., Ex. K to Pl.'s Resp.

---

[1] The extent of Hair's role in Human Resources is disputed by the parties.

to Mot. for Summ. J., at 58:22-23.)  Plaintiff also told Hair that Plaintiff felt like Dick was "taking all of her authority away" and "taking over what her job responsibilities had been as operations director."  (*Id.* at 58:24-25 – 59:1-4.)

Plaintiff's employment with Select ended on June 7, 2006.  Plaintiff contends that her employment was terminated, as she was given no other option but to resign.  In their briefing before the Court, Defendants merely state that Plaintiff's employment "ended" and do not provide any record evidence surrounding this event.  (*See* Defs.' Mot. for Summ. J. 10 (stating "[Plaintiff's] employment ended in a meeting on June 7, 2008"); Moore Dep., Ex. 1 to Defs.' Mot. for Summ. J. (stating same and failing to provide additional details of the June 7, 2008 meeting).)  On June 8, 2006, Dick sent an e-mail to various Select employees, stating that Tiffany Walsh ("Walsh") had accepted the position of Interim Director of Operations.  (June 8, 2006 E-mail, Ex. 9 to Defs.' Mot. for Summ. J.)  Defendants maintain that Walsh took over the duties previously performed by Plaintiff.  Walsh eventually became the permanent Director of Operations and remains in this position at the current time.  Thereafter, on September 26, 2006, Plaintiff filed a Charge of Discrimination with the EEOC ("EEOC Charge").

On August 29, 2007, Plaintiff filed suit against Defendants, claiming: (1) she was discriminated against on the basis of her gender when she was terminated from employment and replaced with a "substantially less qualified male employee," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") (*see* Compl. ¶¶ 22-23) ("wrongful termination claim"); (2) Defendants unlawfully retaliated against Plaintiff by "terminating [her] and subjecting her to adverse employment actions" in violation of Title VII (*see id*. ¶¶ 24-25) ("retaliation claim"); (3) Defendants employed various policies and practices that caused a disparate

impact on female employees in violation of Title VII (*see id*. ¶¶ 26-31) ("disparate impact claim"); and (4) Defendants violated the Equal Pay Act ("EPA") by paying Plaintiff less than Dick, who was completing "substantially equal" work as Plaintiff (*see id*. ¶¶ 32-36) ("EPA claim").

## II.     Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986); *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Where the nonmoving party will bear the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury. *See Mares*, 971 F.2d at 494.

## III.    Wrongful Termination Claim

Title VII prohibits an employer from discharging "any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To prevail, "a plaintiff must show, through either direct or indirect evidence, that the discrimination was intentional." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000). In this case, Plaintiff argues that she has presented direct evidence of discrimination, which would make the traditional *McDonnell Douglas* burden-shifting analysis inapplicable. *See Heim v. State of Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993). Specifically, Plaintiff offers the following as "direct evidence": (1) affidavits from two of Defendants' employees, stating that Dick publicly reprimanded Plaintiff, instructed other employees to report to him and not Plaintiff, took over meetings previously led by Plaintiff, told others that he

4

was hired to replace Plaintiff, and had little knowledge of medical sales; and (2) statements made by Moore to Plaintiff in December 2005, wherein he instructed Plaintiff to hire a man for a managerial position because he did not feel women had the skills it takes to handle a managerial position.

In assessing whether evidence of discrimination is "direct" or "indirect," the Tenth Circuit has instructed that "[s]tatements showing 'an existing policy which itself constitutes discrimination' are direct evidence of discrimination." *Heim*, 8 F.3d at 1546 (internal citations omitted). "In contrast, an offer of . . . discriminatory statements, from which it was argued that the determining cause of an employment decision might be inferred, [is] not direct evidence of causation on the employment decision." *Id.* (internal citations omitted). The Court finds that the evidence offered by Plaintiff falls into this latter category because it does not demonstrate an "existing policy" of discrimination. At best, the evidence cited by Plaintiff infers a discriminatory intent. Accordingly, because the Court finds Plaintiff's evidence to be "indirect," the claim is examined under the well-recognized burden-shifting analysis set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

Pursuant to this framework, the plaintiff in a Title VII action first has the "burden of proving by the preponderance of the evidence a prima facie case of discrimination." *Swierkiewicz v. Sorema N.A.,*, 534 U.S. 506, 510 (2002); *Neal v. Roche*, 349 F.3d 1246, 1248 (10th Cir. 2003). Specifically, in order to establish a prima facie case of discriminatory discharge, Plaintiff must demonstrate that she: (1) belongs to a protected class; (2) was qualified for her position; (3) was terminated despite these qualifications; and (4) was terminated under circumstances that give rise to an inference of discrimination. *See Swackhammer v. Spring/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir.

5

2007).² The burden imposed on a plaintiff at the prima facie stage is not onerous. *Ortiz v. Norton*, 254 F.3d 889, 895 (10th Cir. 2001).

---

² The parties cite slightly different prima facie elements for a wrongful termination case. Specifically, the parties contend that, in order to meet the fourth element of her prima facie case, Plaintiff must show that her position remained open and was ultimately filled by a male. (*See* Defs.' Mot. for Summ. J. 13; Pl.'s Resp. to Defs.' Mot. for Summ. J. 12.)  As noted in *McDonnell Douglas*, the case cited by the parties in support of their prima facie elements, "[t]he facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations."  411 U.S. 792, 802 n.13.  The Tenth Circuit has also noted that the fourth prong for the prima facie test for wrongful termination "is a flexible one that can be satisfied in varying scenarios." *Swackhammer*, 493 F.3d 1166 n.8.  Although "the more standard formulation" of the fourth prong is a showing that "the job was not eliminated after [plaintiff's] discharge," such a demonstration is not always relevant. *Id.*

> Indeed, where an employer contends the actual reason for termination in a discriminatory firing case is not elimination of the employee's position, but, rather, unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant. The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.

*Id.* (internal citations omitted).  Because there is no claim that Plaintiff's position was eliminated, the Court applies the prima facie elements as articulated in *Swackhammer*.

Further, although differing in semantics, the Court does not find the parties' articulation of the fourth prong to greatly differ from that cited by the Court.  This is because a determination that a plaintiff's position was ultimately filled by an individual outside her protected class could be used to analyze whether the circumstances surrounding the termination "give rise to an inference of discrimination." *See Zimmermann v. Assoc. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (stating "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis"); *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000) (finding an inference of discrimination for the purposes of the prima facie analysis when plaintiff was replaced by a white individual); *Vincson v. Aurora Mental Health*, No. 06-cv-00373, 2007 WL 1491265, at *3 (D. Colo. 2007) (unpublished) (listing "[being] replaced by someone who was younger than 40, white, or male" as an example of a "circumstanc[e] giving rise to an inference of discrimination" in an age, race, and sex discrimination case).

Defendants do not dispute that Plaintiff is a member of a protected class, that she possessed the skills necessary for her job, and that she was terminated despite her qualifications.[3] Rather, Defendants' sole argument relates to Plaintiff's ability to meet the fourth element of the prima facie case. (*See* Mot. for Summ. J. 14-15.) Because Defendants contend that Plaintiff was replaced by a female – namely, Walsh – Defendants argue that Plaintiff is unable to meet this element. The Court finds that there exists a genuine issue of material fact as to this issue, however. Viewing the evidence in Plaintiff's favor, the following sequence of events could give rise to an inference of discrimination: (1) Moore's statement, made in November or December of 2005, that he did not want to hire a female for a managerial position because he didn't think women had the skills necessary to handle such a position; (2) Moore's hiring of Dick – a male – in January 2006; and (3) Dick's subsequent assumption of Plaintiff's responsibilities prior to her termination. Taken together and viewed in a light favorable to Plaintiff, these events could suggest that Moore hired Dick to take over Plaintiff's job duties because of his belief that women were not qualified for management positions.

Further, the mere fact that a female was hired for Plaintiff's position after her termination is not dispositive of a termination that is untainted by discrimination. *See Perry v. Woodward*, 199 F.3d 1126, 1136-37 (10th Cir. 1999) ("This court has never applied a test containing the inflexible requirement that a plaintiff who is a member of a group that has historically been discriminated

---

[3] As noted above, Defendants have failed to provide record evidence regarding the manner in which Plaintiff's employment with Select came to an end. Therefore, taking all inferences in favor of Plaintiff, *see Anderson*, 477 U.S. at 249-52, and given the lack of contradictory argument from Defendants, the Court assumes, for the purposes of Defendants' Motion for Summary Judgment, that Plaintiff was indeed terminated from her employment with Select.

7

against must show that she was replaced by someone outside her protected class to establish a prima facie case of wrongful termination under the *McDonnell Douglas* framework.") Imposition of such a rule "could result in the dismissal of meritorious claims [because it] would preclude suits against employers who replace a terminated employee with an individual who shares her protected attribute only in an attempt to subvert a lawsuit." *Perry*, 199 F.3d at 1137. Therefore, Walsh's subsequent assumption of Plaintiff's position does not automatically clear Plaintiff's termination from an "inference of discrimination." The Court accordingly finds that Plaintiff has made a sufficient demonstration of her prima facie case for summary judgment purposes.

Under the *McDonnell Douglas* analysis, if the plaintiff establishes a prima facie case, the burden then shifts to the employer to offer a legitimate non-discriminatory reason for its actions. *Neal*, 349 F.3d at 1248. If the employer offers such a reason, the burden shifts back to the plaintiff to show that there is a "genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." *Richmond v. Oneok, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997); *see Kendrick v. Pensky Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). In this case, however, Defendants fail to cite any "legitimate non-discriminatory reason" for Plaintiff's termination or to move for summary judgment on the basis that Plaintiff is unable to show pretext. Rather, as outlined above, their sole argument in support of summary judgment relates to Plaintiff's ability to prove the fourth element of her prima facie case. The remaining steps of the *McDonnell Douglas* framework are thus inapplicable to Plaintiff's wrongful termination claim, and Defendants' motion for summary judgment as to such claim is denied.

**IV.     Retaliation Claim**

Title VII makes it an unlawful employment practice for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  Like her wrongful termination claim, Plaintiff's retaliation claim is subject to the *McDonnell Douglass* burden-shifting framework.  *See Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009).  In order to establish a prima facie case of retaliation, Plaintiff must show that: (1) she was engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged employment action to be materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse employment action.  *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

In order to meet the first element of her prima facie case, Plaintiff must demonstrate that she opposed a "practice made an unlawful employment practice by Title VII." *Zokari*, 561 F.3d at 1081.  "Opposition" can be protected even if a plaintiff is wrong about whether her employer had, in fact, engaged in a violation of Title VII; instead, it is enough that a plaintiff had a "good faith belief that Title VII ha[d] been violated." *Peterson v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002).  Plaintiff argues that she engaged in protected opposition when "she reported discriminatory conduct she experienced at work to. . . [Hair] and [Moore]."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. 17.)  Plaintiff cites three separate instances of "protected opposition": (1) a conversation with Moore, wherein she told Moore about "[Dick's] screaming at [her], his trying to embarrass her and humiliate [her] in front of others" (Pl.'s Dep., Ex. B to Pl.'s Resp. to Defs.' Mot. for Summ. J., at 22:24-25 – 23:1-3); (2) an e-mail she sent to Moore, which asked "why [her]

9

decision power [was] taken away" (March 8, 2006 e-mail, Ex. L to Pl.'s Resp. to Defs.' Mot. for Summ. J.); and (3) a conversation with Hair, wherein she told Hair that she "felt like [Dick] . . . was . . . stepping on her toes," "taking all of her authority away," and "taking over what her job responsibilities had been as operations director" (Hair Depo., Ex. K to Pl.'s Resp. to Mot. for Summ. J., at 58:22-25 – 59:1-4).

The Court is unpersuaded that these instances qualify as protected opposition to discrimination because Plaintiff's comments fail to convey a concern that her employer engaged in a discriminatory practice made unlawful under Title VII. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("Although no magic words are required, to qualify as protected opposition the employee must convey to the employers his or her concern that the employer has engaged in a practice made unlawful by the ADEA."). Instead, her comments relate to her concern that Dick was "stepping on her toes" professionally and treating her in a rude and unkind manner. Such comments have no relation to Plaintiff's gender or discriminating conduct based on gender. As noted by the Tenth Circuit, "Title VII does not prohibit all distasteful practices by employers." *Petersen*, 301 F.3d at 1188. While Plaintiff was obviously upset about Dick's role in the company and his treatment of her, none of the comments made to Moore or Hair evince a belief that Dick's position or behavior was the result of Plaintiff's sex. Absent such an indication, Plaintiff's comments do not constitute "protected opposition" under Title VII. *See Hinds*, 523 F.3d at 1203 (finding that employee's e-mails to employer did not constitute protected opposition, as required for prima facie case, where e-mails did not mention or even allude to age or age discrimination); *Peterson*, 301 F.3d at 1188 (stating a plaintiff's opposition to an employer's behavior would be "protected" if it was based on employer's unlawful intent – "that is, only if [the

10

employer] mistreated [the employee] because of [the employee's] race or religion") (also stating "[t]o oppose plain vanilla rude and unfair conduct by Tansy is not to oppose conduct made an unlawful practice by [Title VII]"). Because Plaintiff is unable to make a prima facie case of retaliation under Title VII, the Court grants Defendants' Motion for Summary Judgment as to this claim.

## V.     Disparate Impact Claim

Plaintiff's third cause of action asserts a disparate impact claim. "A claim of disparate impact, unlike a claim of disparate treatment, does not require a finding of intentional discrimination." *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1199 (10th Cir. 2006). Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by a business necessity." *Carpenter v. Boeing, Inc.*, 456 F.3d 1183, 1187 (10th Cir. 2006) (internal citations omitted). Like other Title VII claims, a plaintiff must exhaust her administrative remedies before asserting a disparate impact claim. *See Duncan v. Manager Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) ("A Title VII plaintiff must 'exhaust administrative remedies for each individual discriminatory or retaliatory act.'") (internal citations omitted).

Defendants move for summary judgment on Plaintiff's disparate impact claim, arguing that she failed to exhaust her administrative remedies as to this claim. Specifically, Defendants argue that Plaintiff's EEOC Charge fails to contain an allegation or implication of disparate impact. Plaintiff concedes that her Charge fails to make a claim for disparate impact, and does not address this claim in her response to Defendants' Motion for Summary Judgment. (*See* Pl.'s Resp. to Defs.'

11

Mot. for Summ. J. 3 (stating Plaintiff does not dispute Defendant's Undisputed Fact Number 21).) Therefore, in the absence of any contradictory argument from Plaintiff, the Court assumes Plaintiff is abandoning her disparate impact claim, and Defendants' Motion for Summary Judgment is granted as to such claim.

**VI.    EPA Claim**

Finally, Plaintiff claims that Defendants violated the EPA because she was paid less than Dick despite the fact that she and Dick were performing substantially equivalent work. Claims based on the EPA proceed in two steps. First, the plaintiff must establish a prima facie case of discrimination by demonstrating the following: (1) the plaintiff was performing work that was substantially equal to that of employees of the opposite sex, taking into consideration the skills, duties, supervision, effort, and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) employees of the opposite sex were paid more under such circumstances. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 n.5 (10th Cir. 2006).

"Having met this, the burden of persuasion then shifts to the defendant to prove that the wage disparity was justified by one of four permissible reasons." *Id.* (citing *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993)). "These reasons are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; [or] (4) a disparity based on any factor other than sex." *Mickelson*, 460 F.3d at 1311 (citing, *inter alia*, 29 U.S.C. § 206(d)(1)). If the employer "fails to convince the jury with its evidence of one or more of the 'affirmative defenses' . . . the plaintiff will prevail on her prima facie case." *Mickelson*, 460 F.3d at 1311 (citing *Tidwell*, 989 F.2d at 409)). In order to prevail at the summary judgment stage, an employer "must

produce sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains." *Mickelson*, 460 F.3d at 1312 (citing *Stanziale v. Jargowsky*, 200 F.3d 101, 108 (3d Cir. 2000)).

### A.     Prima Facie Case

Defendants do not dispute that the conditions where Plaintiff and Dick worked were the same or that Dick was paid more than Plaintiff. Instead, Defendants argue that summary judgment is proper because Plaintiff is unable to meet the first element of her prima facie case – namely, that she performed work substantially equal to Dick. "Whether two or more jobs require equal work in EPA terms is decided on a case-by-case basis." *Mehus v. Emporia State Univ.*, 222 F.R.D. 455, 473 (D. Kan. 2004). "The relevant comparison is between the jobs and not the people holding them." *Brickley v. Employers Reassurance Corp.*, 293 F. Supp. 2d 1227, 1230 (D. Kan. 2003) (citing, *inter alia*, *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 592 (11th Cir. 1994)). Courts do not construe the EPA's equal work requirement broadly. *Sprague v. Thorn Am., Inc.*, 129 F.3d 135, 1364 (10th Cir. 1997). "Like" or "comparable" work does not satisfy this standard, and it is not sufficient that "some" aspects of the job are the same. *Mehus*, 222 F.R.D. at 473 (citing *Nulf v. Int'l Paper Co.*, 656 F.2d 553, 560 (10th Cir. 1981)). "[This] inquiry is a factual determination, and summary judgment will therefore often be inappropriate." *Mehus*, 222 F.R.D. at 475.

As noted above, "substantial equality" is to be evaluated in terms of skills, duties, supervision, effort, and responsibilities of the jobs in question. *Mickelson*, 460 F.3d at 1311. "This requires the court to make a practical judgment on the basis of all the facts and circumstances of a particular case." *Brickley*, 293 F. Supp. 2d at 1231. As explained by the Tenth Circuit:

> Skill includes such considerations as experience, training, education, and ability. Effort refers to the physical or mental exertion necessary to the performance of a job.

13

> Responsibility concerns the degree of accountability required in performing the job. Application of the [EPA] depends not on job titles or classifications but on the actual requirements and performance of the job.

*EEOC v. Cent. Kan. Med. Ctr.*, 705 F.2d 1270, 1272 (10th Cir. 1983)). In this case, Defendants argue that Plaintiff's job was not substantially equal to that of Dick because: (1) Dick had a master's degree and business development experience, while Plaintiff only "had some college and focused her career on operational functions" (Defs.' Mot. for Summ. J. 20); and (2) Dick was hired to "pursue special projects and growth of the business" and was not hired to perform Plaintiff's job (*id.*).

After reviewing the record, the Court concludes that genuine issues of material fact remain for the trier of fact as the first element of Plaintiff's prima facie case. First, although Dick's educational background is more extensive than Plaintiff's, Defendants have not established a direct relationship between Dick's degrees and the work he performed for Select. As testified by Dick, his undergraduate degree was in physical education, and his masters degree was in sports administration. (Dick Depo., Ex. A to Pl.'s Resp. to Defs.' Mot. for Summ. J., at 43:25 – 44:11.) Absent evidence tying such degrees to the work performed by Dick for Select – a company involved with home medical equipment – the Court does not find this fact to be overly useful in comparing the work of Dick and Plaintiff.

Second, in assessing the position to which he was hired, there exists conflicting evidence in the record which makes summary judgment inappropriate. In the summary judgment briefing submitted to the Court, Defendants represent that Dick was hired to the position of "Executive Vice President," attaching a job description for such position and maintaining that said description outlines Dick's position. (Defs.' Mot. for Summ. J. 4; Executive Vice President Job Description,

Ex. 3 to Defs.' Mot. for Summ. J.)  In his deposition testimony, however, Moore – the individual who hired Dick– testified that he "disagreed with [Dick's] statement [that] . . . [Moore] hired him as executive vice president."  (Moore Dep., Ex. E to Pl.'s Resp. to Defs.' Mot. for Summ. J., at 62:16-19.)  Further, according to Plaintiff, Moore represented to her that she and Dick were "equals," suggesting that their positions were at the same level.  It is therefore unclear as to what position Dick was hired and to what extent Dick performed the functions listed within the Executive Vice President job description.

Third, Plaintiff has demonstrated sufficient evidence showing that Dick's job duties greatly overlapped with hers in order to create an issue of fact as to whether she and Dick performed "substantially equal" work. As testified by Hair, Dick took over most of the responsibilities that Plaintiff had as Operations Director after he was hired by Moore.  (*See* Hair Dep., Ex. K to Pl.'s Resp. to Defs.' Mot. for Summ. J., at 58:5-8.)  Further, during his deposition, Dick stated that his and Plaintiff's duties were "very similar" when asked how their duties differed.  (Dick Dep., Ex. A to Pl.'s Resp. to Defs.' Mot. for Summ. J., at 35: 4-6.)  Plaintiff also testified that Dick told her he was hired to replace her and that she was instructed to train Dick on all aspects of her job.  Finally, Plaintiff maintains that Moore instructed her to draft a memorandum, informing other employees that Dick was taking over some of her job responsibilities so that she could work on regulations and billing.  (*See* Memorandum, Ex. I to Pl.'s Resp. to Def.'s Mot. for Summ. J.)  Viewing this evidence in a light most favorable to Plaintiff, the Court is unable to find, as a matter of law, that the work performed by Plaintiff and Dick was not "substantially equivalent."  Although the Court is mindful of Defendant's contention that Dick's job responsibilities also included pursuing business growth opportunities and acting as Select's "public face," the Court finds that the question of whether Dick

and Plaintiff were performing substantially equivalent work is more aptly decided by a jury after a full evidentiary record is developed during trial.

### B. Justification for Wage Difference

As a second basis for summary judgment, Defendants argue that Plaintiff's EPA claim fails because, even assuming Plaintiff can demonstrate her prima facie case, "the functions which [Dick] performed in terms of special projects and expansion . . . provide a non-sex-related basis for a difference." (Defs.' Mot. for Summ. J. 21.) However, fatal to Defendants' argument is the fact that the record is devoid of any evidence that salary decisions were, in fact, based on Dick's alleged performance of "special projects and expansion" functions. Defendants provide only one sentence of argument as to this "non-sex related basis" for the wage difference at issue and entirely fail to direct the Court to any testimony from Moore (or any other decision maker) suggesting that salary decisions were based on such a factor. In the absence of such evidence, Defendants cannot meet their burden of persuasion, and its motion for summary judgment must be denied. *See Stanziale*, 200 F.3d at 108 (reversing district court's grant of summary judgment for employer on EPA claim where the record contained no evidence that the defendant made salary decisions based on educational qualifications). The Court therefore denies Defendants' Motion for Summary Judgment as to Plaintiff's EPA claim.[4]

---

[4] In their reply brief, Defendants argue that certain evidence presented by Plaintiff – namely, affidavits from former Select employees Tina Shelly and Bruce Morse and testimony from Plaintiff regarding Select operations after her departure – should be disregarded by the Court. Because the Court did not find consideration of such evidence necessary for its determination of Defendants' summary judgment motion, the Court need not address these arguments.

## VII. Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment (Doc. 31) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion for Summary Judgment is granted as to Plaintiff's retaliation and disparate treatment claims and is denied as to Plaintiff's wrongful termination and EPA claims.

**ORDERED this 4th day of September, 2009.**

**TERENCE KERN
UNITED STATES DISTRICT JUDGE**